UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONGBO KE,<br>Petitioner,<br>v.<br>WARDEN OF DESERT VIEW FACILITY, et al.,<br>Respondents. | Case No. 5:26-cv-04879-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 246-459-513** |

Hongbo Ke ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. No. 1. The Court has considered the Petition, Respondent's Answer and exhibits, Petitioner's Reply and Petitioner's Supplemental Notice.

## I. Background

Petitioner is a native and citizen of the People's Republic of China. On September 21, 2022, Petitioner was admitted to the United States on a valid B-1/B-2 nonimmigrant visa. On February 23, 2023, Petitioner filed a Form I-589 application for asylum and withholding of removal with United States Citizenship and Immigration Servies ("USCIS"). His application remains

pending. After applying for asylum, Petitioner applied for and was granted employment authorization by USCIS. Petitioner states that since then, he has lived openly and peacefully in the community, worked lawfully, paid taxes, and regularly attended church. Dkt. No. 1, Petition ¶¶ 13-15.

On July 30, 2026, Petitioner traveled by domestic flight to Los Angeles International Airport, where he was arrested by Immigration and Customs Enforcement ("ICE"). He was transported to Desert View Facility, where he remains detained. Petitioner states he was arrested without a warrant. *Id.* ¶¶ 16, 17, 20.

On August 17, 2026, Petitioner received an individualized bond and custody redetermination before an Immigration Judge, who denied Petitioner's request for relief. *Id.* ¶ 22.

## II. Petition, Answer and Reply

The Petition alleges (1) violation of procedural due process in detaining Petitioner without advance notice, a pre-deprivation hearing, or any meaningful opportunity to contest the basis for his detention, and (2) violation of substantive due process in detaining Petitioner in the absence of circumstances demonstrating such confinement is necessary to prevent flight or protect the community. Petition ¶¶ 28-49.

Along with the Answer, Respondents submitted the Form I-213, which states that Petitioner is charged as removable under 8 U.S.C. § 1227(a)(1)(B) as a "nonimmigrant overstay." Dkt. No. 7-1 at 6-7 (Form I-213). Petitioner came to the attention of Enforcement and Removal Operations ("ERO") pursuant to a Transportation Security Administration ("TSA") lead referral; law enforcement record checks revealed that Petitioner's B-2 visa had expired on March 19, 2023. *Id.* at 7-8. On July 30, 2026, pursuant to a targeted enforcement operation, ERO arrested Petitioner at LAX. ERO served Petitioner with Immigration Form I-862 Notice to Appear, I-200 Warrant for

Arrest of Alien, I-286 Notice of Custody Determination, I-826 Notice of Rights and Request for Disposition, and a list of free legal services pursuant to 8 U.S.C. § 1227(a)(1)(B) as a visa overstay. *Id.* at 8. ERO processed Petitioner "as a Notice to Appear." *Id.* The Form I-213 states that Petitioner has no criminal history. *Id.*

Respondents also submitted the arrest warrant, which contains a certificate of service that it was served on Petitioner on July 30, 2026. Dkt. No. 7-1 at 11.

Also submitted with the Answer is the Form I-862 Notice to Appear, which states that Petitioner remained in the United States beyond March 19, 2023, without authorization. The Certificate of Service states that the Notice was served on Petitioner on August 2, 2026, and he refused to sign. *Id.* at 15.

The Form I-213 states the ERO served Petitioner with the Form I-286 Notice of Custody Determination. *See* Dkt. No. 7-1 at 8. The Form I-286 is not included in the documents submitted to the Court.

In their Answer, Respondents contend that to the extent Petitioner may seek to challenge his arrest and detention, those claims are rendered moot by the August 17, 2026 bond order. Respondents further state that as a visa overstay whose deferred action lapsed, Petitioner had no conditional liberty interest and consequently, any due process arguments may only be directed to the bond denial. Respondents attached the decision of the IJ denying bond on the ground that Petitioner is danger to the community. Dkt. Nos. 7, 7-1 at 3-4.

In reply, Petitioner emphasizes that he does not ask this Court to review the IJ's order denying bond. *See* Dkt. No. 8. On October 16, 2026, Petitioner submitted a Notice of Supplemental Developments stating that on October 15, 2026, pursuant to California Penal Code section 1001.95, the Los Angeles County Superior Court dismissed all six misdemeanor counts that

had been pending against Petitioner on the ground that he had successfully completed judicial diversion. Dkt. No. 9. Petitioner states that under California Penal Code section 1001.97(a), successful completion of diversion results in the underlying arrest being "deemed to have never occurred" for purposes of California law.[1] *Id.*

## III. Discussion

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a).

### A. Petitioner's Claims are not Moot

Respondents argue that Petitioner's August 17, 2026 bond hearing mooted his challenges to his arrest and detention. A claim is moot only when "there is no longer a possibility" that a litigant "can obtain relief for his claim." *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). "[W]hen, by virtue of an intervening event, a court [ ] cannot 'grant any effectual relief whatever' in favor of the [petitioner]," the proceeding should be dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation omitted). Here, Petitioner's bond hearing does not preclude the Court from granting any effectual relief. The Court can still grant the only

---

[1] Section 1001.97 states:

> Upon successful completion of the terms, conditions, or programs ordered by the court pursuant to Section 1001.95, the arrest upon which diversion was imposed shall be deemed to have never occurred. The defendant may indicate in response to any question concerning their prior criminal record that they were not arrested. A record pertaining to an arrest resulting in successful completion of the terms, conditions, or programs ordered by the court shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate.

Cal. Penal Code § 1001.97(a).

relief that Petitioner seeks in the Petition—his outright release. *See Moscui v. Semaia*, No. 5:26-cv-05748-MBK, 2026 WL 3027140, at * 4 (C.D. Cal. Oct. 8, 2026) ("Indeed, the Court can still grant the only relief that Petitioner seeks in the Petition—his outright release. There is therefore no sense in which Petitioner's claims are moot."). To the extent that Respondents mean to suggest that the bond hearing establishes that Petitioner has suffered no legal or constitutional violations, or that he has not been prejudiced by any such violations, the Court addresses those issues below.

**B. Procedural Due Process**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

Evaluating Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Protected Liberty Interest**

The parties dispute whether Petitioner has a constitutionally protected liberty interest. Petitioner asserts that he does; Respondents disagree, arguing that as a visa overstay who was never granted any form of parole,

Petitioner had no conditional liberty interest. Answer at 2. When immigrants are detained by the government and then released conditionally, they have a liberty interest arising from "at least an implicit promise" that will be revoked only if they fail to live up to the parole conditions. *Pinchi v. Noem*, 792 F. Supp 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1973)). Respondents' position is that without a former detention, there has been no implicit promise of release and thus no liberty interest. But Respondents do not explain why the government's implicit promise not to revoke conditional release is the only ground upon which a protected liberty interest can be created. District courts in this circuit have reasoned that a protected liberty interest can be created by the government's affirmative decision not to detain a noncitizen who has lived at liberty for an extended duration while their immigration case proceeds – notwithstanding the fact that he was subject to detention under 8 U.S.C. § 1226(a) (providing that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States."). *See Okeshov v. Santacruz*, No. 5:26-06187-AS, 2026 WL 3322141, at * 3 C.D. Cal. Nov. 3, 2026) (noncitizen who applied for asylum, received employment authorization, had no criminal record, and resided in United States for over six years before ICE detained him at a scheduled interview appointment with USCIS has the same liberty interest in his continued freedom as an individual initially detained, because the government made a decision not to detain him in the first place); *Oliveira-Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219, at * 5 (E.D. Cal. Oct. 1, 2026) (where "noncitizen builds a life in the United States after being granted entry pursuant to a visa—such that the government was not only aware of but approved of the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the government does not act

to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status"); *Orozco-Salazar v. Warden*, No. 5:26-cv-04555-KES, 2026 WL 2497334, at *2, 3 (C.D. Cal. Aug. 25, 2026) (collecting cases and finding liberty interest where noncitizen who had continued to reside in United States for three years after visa expired and formed strong community and family ties); *Tellez v U.S. General Atty*, No. 1:26-cv-05004 (EJD), 2026 WL 2654571, at * 2 (E.D. Cal. Sept 9, 2026) ("noncitizen who has lived at liberty for an extended duration while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process"); *Tello Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

Here, Petitioner arrived in the United States on September 21, 2022, applied for asylum on February 23, 2023, and was granted employment authorization by USCIS. His asylum application is pending. He resided in the United States for over three years after his visa expired on March 19, 2023, living openly and peacefully in the community, working, and paying taxes until ICE detained him on July 30, 2026. Respondents do not point to any change in circumstances demonstrating that Petitioner now presents a risk of danger or flight requiring detention. Consistent with Respondents' statement in the Form I-213 that Petitioner has no criminal history, Petitioner successfully completed diversion on misdemeanor charges such that

the underlying arrest is "deemed to have never occurred" under California law. *See* Cal. Penal Code § 1001.97(a). Although the government did not detain and then release Petitioner, the government made a decision not to detain him or otherwise impede his liberty for more than three years while exercising authority over him for purposes of adjudicating his application for asylum. Consequently, the government vested in Petitioner a liberty interest in his continued freedom. *See Okeshov*, 2026 WL 3322141, at *3 (collecting cases).

**2. Process Owed in Connection with Detention**

As Petitioner has a protected liberty interest in remaining out of custody, the question is what process he is owed before the government may take that liberty interest away. To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Regarding the first factor, as set forth above, Petitioner has a vested liberty interest in remaining free from detention, as he had for more than three years after his visa expired. With full knowledge of Petitioner's identify, immigration status, and location during the pendency of his immigration application, and having granted him employment authorization, Respondents

continuously elected not to detain him while exercising authority over his legal proceedings. "This decision to allow Petitioner to live freely in the community gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" *Troykalo v. Armant*, EDCV 26-04875-KK-PD, 2026 WL 2602910, at * 4 (C.D. Cal. Sept. 2, 2026) (quoting *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004)). While Respondents' decision not to detain Petitioner was discretionary, *see* 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed his asylum application. *See id.* (collecting cases). Further, Respondents "deliberately acquiesced" to Petitioner's continued freedom by, among other things, affirmatively granting him employment authorization while his application was pending. *Id.* (quotation omitted) (cleaned up). Accordingly, Petitioner established a significant private interest.

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to remain at liberty for over three years after he filed his asylum application and his visa expired.

The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (quoting

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or a flight risk, particularly in light of his successful completion of diversion.

As to the third *Mathews* factor, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing both appear to be minimal. The only justification Respondents offer for Petitioner's detention is his visa overstay; however, Respondents were aware of Petitioner's overstay since March 2023.[2] Respondents do not identify any changed circumstances since then justifying Petitioner's detention. *See Pinchi*, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact the government "may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). And, as the Court explained in *Troykalo*, "while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, 'those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.'" 2026 WL 2602910, at *6 (quoting *E.A. T.-B.,* 795 F Supp. 3d at 1324).

Because each of the *Mathews* factors favors Petitioner's pre-deprivation process claim, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

[2] Respondents have also been aware of Petitioner's pending asylum application since it was filed in February 2023.

**3. Remedy**

But Respondents do not discuss whether or how the due process violation resulting from the absence of pre-detention process was remediated by the bond hearing. *See Saballos Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that post-detention process is no substitute for the pre-detention process petitioner was owed); *Gudavasov v. Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the

status quo, or 'the last uncontested status which preceded the pending controversy.' " *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)).

For the above-stated reasons, the Court finds that Petitioner is entitled to release due to the violation of his procedural due process rights.

**IV. Order**

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that Judgment be entered granting the Petition as to Count One for the reasons set forth above, and count two is dismissed without prejudice.

Petitioner Hongbo Ke (A# 246-459-513) is **ordered released** within 24 hours of this Order on reasonable conditions of supervision. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of his personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 24, 2026

Patricia Donahue

Patricia Donahue
United States Magistrate Judge